**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-4295

———————

KATHRYN M. VAN ORDEN, Individually and as Administratrix
Ad Prosequendum of the Estate of Celena J. Sylvestri,
Appellant
v.

BOROUGH OF WOODSTOWN NEW JERSEY; COUNTY OF SALEM; STATE OF
NEW JERSEY; NEW JERSEY STATE POLICE; WOODSTOWN POLICE
DEPARTMENT; SALEM COUNTY SHERIFF; NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION BUREAU OF DAM SAFETY AND FLOOD
CONTROL; PILESGROVE TOWNSHIP; JOHN DOES 1–10; JANE DOES 1–10;
ABC COMPANIES 1–10

———————————————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-13-cv-05002)
District Judge: Honorable Jerome B. Simandle

———————————————————

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 12, 2017

Before:  JORDAN and KRAUSE, *Circuit Judges*, and STEARNS, *District Judge*.[*]

(Opinion filed: July 18, 2017)

———————————

[*] The Honorable Richard G. Stearns, United States District Judge for the District
of Massachusetts, sitting by designation.

---

OPINION**

---

KRAUSE, *Circuit Judge.*

Kathryn Van Orden appeals a District Court order entering summary judgment in favor of the Borough of Woodstown, the Woodstown Police Department, the County of Salem, and the Salem County Sheriff (collectively "Appellees"), on a state-created danger claim alleging that Appellees' actions caused Van Orden's daughter to drown in her car. For the reasons that follow, we will affirm.

## I.     Background

The tragic facts of this case relate to flooding that occurred on Route 40 near Kings Highway in Salem County, New Jersey during Hurricane Irene in August 2011. Near that site is the Veterans Memorial Lake Dam ("the Dam"), owned and operated by the Borough of Woodstown. Woodstown maintained an Emergency Action Plan ("EAP") for the Dam, which distributed the responsibility for an emergency response among Woodstown, Salem County, and the State of New Jersey. Under the plan, Woodstown was responsible for warning the public of emergency conditions at the Dam and implementing evacuations; Salem County would warn affected municipalities of emergency conditions; and the State of New Jersey would coordinate emergency actions

---

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

and specialized assistance, as well as provide assistance to the municipalities and counties if requested.

Two weeks before Irene was expected to hit New Jersey, another major storm struck the area, leaving the ground saturated with water. During this storm, Appellees had opened the floodgates of the Dam to prevent an overflow as the water level behind the Dam rose. At that time, the area near Route 40 and Kings Highway downstream from the Dam did not flood. On August 25, just before Irene came ashore, the New Jersey Governor issued an executive order declaring a State of Emergency and granting state police the right to control highway traffic. The next day, Appellees partially opened the floodgates again to lower the water level in anticipation of the hurricane. On August 27, Salem County also issued a travel ban prohibiting all non-emergency vehicles from traveling on roads in the county after 10:00 PM. That same day, Appellees fully opened the Dam's floodgates to prepare for the impending hurricane. Despite the opened gates, the Dam still overtopped that night around 10:30 PM, activating the EAP. Appellees notified the appropriate authorities, including the State Police. As Route 40 is a state highway under the jurisdiction of the state police, and the police told Appellees they would close the road, Appellees took no further action. The state police requested to block the road with signs, but the request was denied as the signs had the potential to become projectiles in high winds.

Appellant's daughter, Celena Sylvestri, left her home by car around 11:00 PM, even though she was aware of the Salem County travel ban and the State of Emergency.

By that time, most roads in Woodstown were flooded, and in particular, a tributary downstream of the Dam called Chestnut Run flooded due to a blocked pipe, creating a surge of water near Route 40 and Kings Highway. Around 1:00 AM, Ms. Sylvestri contacted the 911 Emergency Center because her car had been swept off the road by floodwaters on Route 40 near Kings Highway. Despite the attempts of emergency responders, she drowned.

Appellant brought suit on behalf of her daughter's estate alleging that Appellees' actions in opening the Dam floodgates without first closing Route 40 near Kings Highway[1] constituted a state-created danger in violation of 42 U.S.C. § 1983.[2] The District Court granted Appellees' motion for summary judgment, concluding that Appellant could not show that Appellees acted with the required culpability in opening

---

[1] The District Court analyzed Appellant's claim as presenting two different legal theories: first, that Appellees were liable for opening the floodgates, and second, that Appellees were liable for failing to update the EAP, which would have made them aware that the relevant intersection was prone to flooding and should be blocked. As a result, the District Court analyzed these issues separately and awarded summary judgment based on different elements of the state-created danger test. However, we perceive Appellant to be arguing on appeal that these theories are one and the same: that Appellees acted wrongly by opening the floodgates without closing all threatened areas, and any historical failures to update the EAP and anticipate danger is merely relevant to the culpability of that act. Even assuming the District Court erred in its characterization of Appellant's theory, there is no need for remand, as our standard of review for summary judgment is *de novo*, *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015), and we may affirm on any ground supported by the record, *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 469 (3d Cir. 2015).

[2] Appellant also brought a number of state tort claims and claims against other government entities, but those claims were dismissed, leaving only the § 1983 claim against Appellees.

the floodgates and that Appellees' failure to update the EAP did not support a sufficient causal link for liability. This appeal followed.

## II.    Jurisdiction and Standard of Review

The District Court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's grant of summary judgment *de novo*. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015). Summary judgment is appropriate where the moving party has established that "there is no genuine dispute as to any material fact" and, viewing the facts in the light most favorable to the non-moving party, "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006). The non-moving party, to survive summary judgment, "must show specific facts such that a reasonable jury could find in its favor." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007).

## III.    Discussion

Based on a plenary review of the record, we conclude that Appellant failed to produce evidence to meet her burden of demonstrating each of the elements of a state-created danger claim, and in particular, that Appellees' actions were a fairly direct cause of the harm.

To assert a constitutional claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a constitutionally guaranteed right. *Phillips v. County of Allegheny*, 515 F.3d

224, 235 (3d Cir. 2008). The right to bodily integrity is a liberty interest guaranteed by the Due Process Clause of the Fourteenth Amendment. *See D.R. ex rel. L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1368 (3d Cir. 1992) (en banc). While the Due Process Clause does not impose on the state an affirmative duty to protect its citizens, this Court has adopted a state-created danger doctrine as an exception to that rule, *Phillips*, 515 F.3d at 235. Under this doctrine, a plaintiff must show that

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks omitted).

Our analysis here begins and ends with the first element of our state-created danger doctrine. This element is a two-part inquiry requiring that the harm ultimately caused was both foreseeable and fairly direct. *See Henry v. City of Erie*, 728 F.3d 275, 282–83 (3d Cir. 2013); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). Even assuming the danger of drowning was a foreseeable result of Appellees'

actions here,[3] Appellant has failed to produce facts demonstrating that a harm was a sufficiently direct result of those actions to support liability as a matter of law.

An official's actions are the "fairly direct" cause of the harm if the actions "precipitated" or were the "catalyst" for the harm that occurred. *Morse*, 132 F.3d at 910. The actions must be close in time and progression to the ultimate harm, and it is insufficient if the causation is so attenuated that the official's actions merely "took place somewhere along the causal chain that ultimately led to the [victim's] harm." *Henry*, 728 F.3d at 285. In *Henry*, we held that it was likely foreseeable that failing to provide a smoke detector and fire escape in violation of housing regulations could lead to death in a fire. *Id.* at 283. However, the housing authority officials' approval and subsidization of the apartment for the Section 8 housing program involved "too many links in the causal chain after [the] defendants acted and before tragedy struck." *Id.* at 286. Crucially, we noted that the plaintiffs' decision to remain in the apartment despite knowledge of the violations further attenuated the connection because "when a victim bears some responsibility for the risks she has incurred, it is even more difficult to say that the 'state' has 'created' the 'danger' to her by its affirmative acts." *Id.* at 285–86 (brackets omitted) (quoting *Jones v. Reynolds*, 438 F.3d 685, 694 (6th Cir. 2006)); *see also Morse*, 132 F.3d at 904, 908–09 (holding that causation was not fairly direct when the defendants allowed

---

[3] Appellant's argument that the District Court erred by improperly discounting the foreseeability of flooding based on the evidence from expert testimony and the inundation map is therefore irrelevant.

construction workers entrance to a school through an unlocked back door, resulting in the entry of a mentally ill individual who then killed a teacher).

Here too, causation is simply too attenuated to be fairly direct. Appellant points to the affirmative act of opening the floodgates and evidence from experts that this led to a greater release of water, which made the relevant portion of the unclosed road more dangerous because Appellees failed to physically close the road. But like the District Court we cannot ignore the evidence that the ground was already saturated from the previous storm, that the Dam overtopped and flooded regardless of the opened gates, that a pipe was blocked at Chestnut Run causing an extra surge of water to the affected roadway, and that the Woodstown parties lacked jurisdiction to close the affected highway (and were told it was being closed by the State Police). Further attenuating the causal chain is the undisputed fact that Ms. Sylvestri chose to drive despite her knowledge of the existing travel ban. Just as in *Henry* and *Morse*, the Appellees' actions here were but one of many factors that resulted in the harm and therefore were too far removed from the eventual harm to be deemed a fairly direct cause by a reasonable juror.

Appellant argues that this case is more closely analogous to *Phillips*, in which we held that 911 operators could be liable for providing confidential information to a suspended coworker, who then used that information to find and kill the victims. 515 F.3d at 224, 228–29, 239–40. But we emphasized there that the "fairly direct" test is an "unavoidably fact specific" inquiry and that causation would have been more attenuated if the harm had occurred to a "'random' individual with no connection to the harm-

8

causing party." *Id.* at 239; *see also L.R. ex rel. N.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 245–46 (3d Cir. 2016) (holding that on the facts as pleaded, the harm was fairly direct because randomness and attenuation were not involved). By contrast here, as an additional attenuating factor, Ms. Sylvestri was a member of the general public who wandered randomly onto the path of danger.

In sum, Appellant has failed to produce evidence supporting facts upon which a reasonable jury could find liability for a state-created danger, and the District Court therefore correctly granted summary judgment in favor of Appellees. *See McCabe*, 494 F.3d at 424.

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.